■ Vasilios Lambos, Appellant, v Michael Weintraub, Defendant, and Montefiore Medical Center, Respondent. [667 NYS2d 711] —Order, Supreme Court, Bronx County (Bertram Katz, J.), entered March 21, 1997, granting defendant-respondent's motion for summary judgment, unanimously reversed, on the law and the facts, without costs, defendant-respondent's motion for summary judgment denied and the complaint reinstated. Appeal from order, same court and Justice, entered May 28, 1997, unanimously dismissed, without costs, as academic in view of the foregoing.

In this medical malpractice action, the parties litigate, *inter*

*alia,* whether defendant Montefiore departed from accepted medical practice in prescribing Dilantin to decedent to combat her apparent seizures and whether such conduct was the proximate cause of her subsequent death. After suffering a seizure, decedent initially was admitted to the Community Hospital at Dobbs Ferry where she was treated, unsuccessfully, with Valium followed by administration of Dilantin, another anti-convulsive medication, which was raised to a therapeutic range of 12.6 milligrams. She then was transferred to defendant Montefiore, arriving comatose, where she experienced what appeared to be another seizure in the emergency room. An emergency room resident also initially administered Valium and, after consulting with the neurology department, then administered Dilantin; decedent's Dilantin levels eventually were raised to 19.5 milligrams. She suffered two subsequent episodes of ventricular fibrillation. Although successfully defibrillated, decedent remained comatose and later died from heart and brain-related ailments.

In support of defendant's motion for summary judgment, an unsigned redacted affidavit from a neurologist averred that decedent's Dilantin levels were closely monitored by Montefiore staff and they remained within a therapeutic range after her admission, so that Montefiore's administration of Dilantin did not contribute to her death. The neurologist also stated that there was no viable alternative medical treatment that would have reversed decedent's medical condition and that the treatment given was reasonable and proper and within accepted standards of care. Plaintiff's expert, a licensed pathologist, in his affidavit submitted in opposition to the motion, countered that the patient had had sufficient Dilantin and was seizure-free upon being transferred from the Community Hospital to Montefiore, and that the additional Dilantin administered at Montefiore was excessive, amounting to a toxic level. Plaintiff's expert also averred that the Dilantin was improperly administered, and constituted "a competing producing cause" of decedent's repeated heart problems. This expert specifically cited to medical texts to establish the causal connection between administration of Dilantin to patients such as decedent and subsequent cardiac arrhythmias.

The motion court noted defendant's contention that any clinician treating a patient in decedent's comatose condition would be presented with a "Hobson's choice" and that the risky alternative of administering further Dilantin was required to prevent further "catastrophic seizures", even though it could cause further cardiac episodes. The court further noted that defendant's expert specifically averred that decedent's level was within a therapeutic level and that accepted standards of practice required that this level be maintained so as to prevent seizures. On this basis, the court granted Montefiore summary judgment.

In view of the factual issues raised by the respective expert

affidavits, a trial is required. Plaintiff's expert affidavit, amplified by decedent's medical records, satisfied the burden imposed on the party opposing summary judgment to demonstrate that the hospital's actions were a departure from the accepted standard of care in the medical community (*cf., Alvarez v Prospect Hosp.*, 68 NY2d 320, 324; *Sisko v New York Hosp.*, 231 AD2d 420, 421, *lv dismissed* 89 NY2d 982) and were a substantial factor contributing to the injury (*Mortensen v Memorial Hosp.*, 105 AD2d 151, 158). The status of that expert, a pathologist, does not vitiate the validity of the affidavit for purposes of defeating summary judgment (*Farkas v Saary*, 191 AD2d 178), but presents only an issue for eventual consideration by the jury in evaluating the weight to be accorded that opinion (*De Luca v Kameros*, 130 AD2d 705). Moreover, defendant's affidavit stated only in conclusory terms that there was no alternative medical treatment that would have reversed decedent's medical condition, undermining the motion court's reliance on this averment. In view of the conflict of opinion between the parties' respective medical experts as to whether defendant's administration of the medication caused or sufficiently exacerbated decedent's medical condition (*Farkas v Saary, supra*), resulting in death, summary judgment should have been denied. Concur—Sullivan, J. P., Rosenberger, Nardelli, Williams and Tom, JJ.